# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 13, 2014

## STATE OF TENNESSEE v. ANTONIO LAMONT FREEMAN

**Appeal from the Circuit Court for Sumner County**
**No. 2010CR820      Dee David Gay, Judge**

_____

### No. M2013-01813-CCA-R3-CD - Filed October 16, 2014

_____

The defendant, Antonio Lamont Freeman, was convicted of one count of possession of contraband in a penal facility, a Class C felony.    On appeal, the defendant argues: (1) the trial court abused its discretion in removing the defendant from the courtroom during his trial; (2) the trial court abused its discretion by introducing evidence into the record during the motion for new trial; (3) the trial judge's alleged continued acts of prejudice warrant a new trial; (4) the State committed prosecutorial misconduct when it assumed facts not in evidence; (5) the trial court abused its discretion by denying the motion for new trial based upon newly discovered evidence; and (6) numerous grounds of ineffective assistance of counsel.  After a thorough review of the record and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ROGER A. PAGE, JJ., joined.

Sharlina Pye-Mack, Hendersonville, Tennessee, for the appellant, Antonio Lamont Freeman.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; L. Ray Whitley, District Attorney General; and Lytle Anthony James, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case arises from an incident where the defendant was charged with possession

of contraband in the Sumner County jail. During an altercation, the defendant's commissary bin was thrown from his cell onto the ground floor of the jail, and the items were scattered across the floor. The defendant was subsequently placed in administrative segregation, and officers later gathered his commissary items and returned them. After returning the bin and the items to the defendant, officers conducted a search and discovered contraband, including Xanax and a non-controlled substance, in a package of Ramen Noodles.

Prior to trial, trial counsel filed a motion to withdraw as counsel after the defendant placed an angry and profane telephone call to trial counsel's paralegal. Trial counsel later struck this motion after the defendant apologized for his actions, and trial counsel agreed to represent the defendant.

While represented by counsel, the defendant filed multiple *pro se* motions during pre-trial proceedings. The trial court admonished the defendant for filing *pro se* motions while represented by trial counsel and informed the defendant that the court would not accept any *pro se* motions filed while the defendant was represented by an attorney. The trial court also informed the defendant that the court would hold the defendant in contempt if he said "one other word . . . . If [he] sa[id] two words, [the court was] going to gag [him] and take [him] out of court."

Shortly after receiving this warning, the defendant again spoke when not addressed by the court, and the trial court ordered the defendant removed from the courtroom. The court informed trial counsel "that anytime that [the defendant] comes into court [it did] not want to hear one word from his mouth. He can whisper to [trial counsel] and talk to [trial counsel] and [trial counsel] speak for [the defendant], but if he says one thing in court from this point on, he is out." The court instructed trial counsel to inform the defendant that "[h]e is not to say one word in this courtroom. If [the court] hear[s] him say anything, he is out; he's in contempt of court."

The defendant filed a federal lawsuit that included the trial judge and the district attorney as co-defendants, and he argued that this federal lawsuit required the trial judge to recuse himself from the defendant's possession of contraband trial.[1] The trial court denied the motion, finding that the trial court was impartial and that the defendant's allegations that the judge had embezzled nine million dollars were calculated to try to create a conflict of interest.

---

[1]The defendant also moved to dismiss the case based upon an alleged failure to disclose exculpatory evidence consisting of a guilty plea of his cell mate, Christopher Ryan, to the charge of possession of contraband.

Several days after the trial court denied the motion to recuse, the defendant's trial commenced. At trial, Officers Jeremy Adams, Charles Bandy, and Sydney Rush testified that on July 9, 2010, they were ordered to search the defendant's cell. The defendant was in a solitary cell in the administrative segregation area of the jail because he had been involved in an altercation the previous day. The officers began to search the defendant's cell, and Officer Rush discovered a suspicious package of Ramen Noodles and noticed that a small piece of scotch tape was holding the back flap of the package down. The package had a slit and appeared to have been cut. Officer Rush set aside the package, and the officers continued searching the cell.

Once the search was complete, Officer Rush told the defendant, "I'm fixing to search your legal mail, all your mail, and I'm going to search this pack of noodles." However, before Officer Rush "could complete [his] sentence," the defendant grabbed the package from Officer Rush's hand and began running out the cell door. Officer Rush grabbed the back of the defendant's pants, and the defendant continued running down the walkway "more or less dragging" Officer Rush down the catwalk and around the corner. Officers were able to subdue the defendant as he appeared to attempt to push the package underneath the door of another cell. The officers recovered the package and found a number of blue and white pills wrapped tightly in a clear bag, a leafy substance that appeared to be tobacco, and a white and blue pill wrapped in toilet paper.

Officers turned the items over to the Jail Administrator, and the items were sealed into an evidence bag. The pills were sent to the Tennessee Bureau of Investigation ("TBI") for testing, but the Ramen Noodles package was not sent. Lieutenant Christopher Tarlecky did not send the package of noodles because he did not see anything that looked illegal in the package, and the TBI would have returned the package untested. Lieutenant Tarlecky testified that he spoke with several inmates, including Gordon Storke, on the evening that the altercation occurred. He stated that Mr. Storke told him that the defendant heard that Christopher Ryan possessed contraband and that the defendant wanted Mr. Ryan in the defendant's cell.

Ms. Patti Choatie, a forensic scientist with the TBI, tested the pills that were seized from the defendant's cell. She testified that tests identified the blue and white pills as Xanax, the one and a half white tablets as a non-controlled substance, and the leafy substance as marijuana. Marijuana was not included on the indictment, and during a jury-out hearing after Ms. Choatie's testimony, trial counsel requested that the court issue a corrective instruction to the jury. The trial court agreed and told the jury that they were not to consider the marijuana as evidence of the charged crime. The court also struck all mention of marijuana from the report, whiting out any references to marijuana in the TBI report.

3

Christopher Ryan, the defendant's cell mate, testified that he brought Xanax and hydrocodone into the jail on July 6, 2010. He gave the defendant some of the contraband as a method of self-defense, stating that "you have to share or you go to the clinic." Mr. Ryan implied that if contraband was not shared, other inmates would attack and forcibly take the contraband. Mr. Ryan did not see where the defendant placed the contraband, but he did recall that the defendant had a plastic storage bin in the cell. Mr. Ryan never placed any of his belongings in the bin because the bin belonged to the defendant.

Gordon Storke was an inmate in the same cell pod as the defendant. He testified that Mr. Ryan brought contraband into the jail by storing it in his rectum and that he and other inmates stood by the cell door while Mr. Ryan removed the contraband. During the July 8 altercation, Mr. Storke witnessed other inmates enter the defendant's cell and throw the defendant's "stuff" over the second-story railing onto the ground floor. He testified that Mr. Ryan wanted to be placed in the defendant's cell.

The defendant took the stand, and as he was being sworn in, he stated, "I solemnly swear that the truth -- that the statement that I'm about to give is the whole truth. That I'm being held in double jeopardy for another man['s] crime." The defendant admitted that he had prior felony convictions for theft of property over $10,000, possession of a Schedule VI drug over 0.5 ounces, and possession of less than 0.5 grams of cocaine. He testified that Mr. Ryan asked him if Mr. Ryan could move to his cell and that Mr. Ryan spoke with officers to arrange the move. The defendant stated that the only contraband he received from Mr. Ryan was two cigarettes, and he said that he had no knowledge of any further contraband that Mr. Ryan possessed. He recalled seeing material thrown out of his cell during the July 8 altercation and stated that he was taken to the medical clinic and subsequently placed in administrative segregation following the altercation. On the way to administrative segregation, the defendant met with Lieutenant Tarlecky to explain his version of the altercation.

The defendant testified that prior to the altercation, he had a storage bin in his cell that contained legal mail, clothing, and a few commissary items that his previous cell mate had left him. He stated that his commissary bin was returned to him "at least four or five hours" after he was placed in his administrative segregation cell. The defendant claimed that he was unaware of any contraband contained in the Ramen Noodles package and stated that he may have won the Ramen Noodles playing poker. He testified that Officer Rush told him that he would be charged if any contraband were found in the noodle package. The defendant then became angry and "threw the no[o]dle packet on the ground, like, I smacked it off the sink." The defendant testified that he did not grab the package and begin to run but rather that he walked out of the cell without the package and began to start toward Mr. Storke's cell. Officers then tackled him to the ground. The defendant testified that the package never left

4

his cell and that he never attempted to slide the package under the door of a different cell. He agreed that he did not have permission from the jail administrator to have Xanax in his possession.

At the conclusion of the proof, Deputy Timothy Gilley spoke on the record with the trial court and both attorneys. After being sworn in, Deputy Gilley told the court that he was informed by several members of the jury that the defendant had been displaying signs for the jury to read. The court then asked Deputy Gilley to speak with the members of the jury, and Deputy Gilley relayed that several jurors informed him that the defendant held up a folder to the jury with the words "Victory Celebration" and a photograph. The defendant told the trial court that he had a photograph that the jury may have seen and that he was planning to send to a family member. Trial counsel did not object to this testimony. Deputy Gilley retrieved the folder, which contained a photograph of the defendant and his girlfriend and the words, "This is a victory picture to second not guilty."[2]

The trial court ordered the defendant removed from the courtroom for the remainder of the trial, which consisted of closing arguments by both attorneys. The defendant was able to remotely see and hear the trial from a pod in the jail. The trial court found that displaying the folder and photograph to the jury was "a direct attempt by the defendant to influence, put pressure on this jury." The trial court also instructed the jury that they were to disregard anything that they were shown that was not introduced into evidence in the case. The trial court informed the jury that the defendant would watch the remainder of the trial via video camera and that the jury could not consider the defendant's absence from the courtroom "for any reason or any purpose."

At the conclusion of the defense's closing arguments, the trial court ordered a brief recess when he learned that the audio component of the defendant's remote video feed had failed. Once the audio was restored, the State gave its rebuttal closing argument. The jury found the defendant guilty of possession of contraband in a penal institution, and the defendant was able to hear this verdict through his remote video feed.

On December 19, 2012, the defendant filed a petition for interlocutory appeal of the trial court's denial of his third motion for the trial judge to recuse himself. *State v. Antonio Freeman*, No. M2012-02691-CCA-10B-CD, 2013 WL 160664, at *1 (Tenn. Crim. App. Jan. 15, 2013). This court affirmed the denial of the motion, concluding that the filing of a lawsuit against a trial judge was insufficient to warrant recusal and that prosecuting the defendant for a prior crime did not require the judge to recuse himself. *Antonio Freeman*,

---

[2]From the record, it appears that this photograph was taken at the conclusion of the defendant's trial for a separate charge in which Judge Gay was the presiding judge.

5

2013 WL 160664, at *4-5.

On June 24, 2013, the trial court conducted a hearing on the defendant's motion for new trial, in which he raised numerous issues, including an allegation of ineffective assistance of counsel. The trial court found that the issues of abuse of discretion and judicial error had previously been litigated and ruled "that this issue is res judicata, it's been determined, and it is not ripe, it's not an appropriate issue for appeal." The defendant next alleged that newly discovered evidence in the form of the testimony of Michael Hudson necessitated a new trial.

Mr. Hudson testified that he was a part of the July 8 altercation and that he was released from jail in May of 2011. Since his release, he had not seen or spoken with the defendant until days before the motion for new trial. He testified that when he learned that Mr. Ryan brought contraband into the jail, he went up to Mr. Ryan's and the defendant's cell in an attempt to persuade Mr. Ryan to sell him some tobacco. An argument ensued, and Mr. Hudson threw the defendant's commissary bin out of the cell and out into the middle of the first floor of the pod.

After the altercation, Mr. Hudson and Mr. Ryan were housed in the same jail pod, and Mr. Hudson learned that the defendant had received a ten-year sentence. Mr. Hudson testified that after he threw the bin out of the cell, officers packed up the commissary and brought it to the holding cells. He stated that the defendant never threatened Mr. Ryan.

Trial counsel testified that he was not provided with Mr. Hudson's name prior to trial and was not aware that Mr. Hudson was the instigator of the July 8 altercation. He agreed that a witness who could have provided the jury with reasonable doubt as to how the defendant came into possession of the contraband would have been very helpful to his case because it would have helped him present questions and raise a reasonable doubt as to the chain of custody regarding the contraband. Trial counsel did not recall finding anything in the jail module report about Mr. Hudson. He agreed that knowing there was an individual who could have filled in the gaps to establish the chain of custody of possession of the contraband would have been very material to the case and that he would have "aggressively pursued it," but he was unable to do so because he did not have that information.

Trial counsel testified that Mr. Hudson's confirmation that the events happened in the manner that the defendant described them would have been material because it would have bolstered the defendant's credibility. He stated that the testimony of Mr. Hudson would have been helpful because there was a gap in time when the defendant was removed from his pod, but his commissary items remained in the pod.

6

Trial counsel next testified regarding the claims of ineffective assistance of counsel. Trial counsel stated that he investigated the incident that led to the filing of his first motion to withdraw as counsel. He stated that he filed the motion because the defendant telephoned his office and "began an angry and profane rant." Trial counsel felt that his staff was genuinely afraid of the defendant and believed that they had been threatened by the defendant. He later learned that the defendant was angry because trial counsel had failed to meet with him "right away" after the defendant was arrested on four new criminal charges. Trial counsel had not been appointed to represent the defendant on any of these charges. The defendant's son was with the defendant when he was arrested, and the defendant felt that his son had been mistreated by police officers. Trial counsel believed that this alleged mistreatment "was more of the source of [the defendant's] anger than anything."

Trial counsel agreed that he did not pursue an interlocutory appeal on either of his motions for the trial judge to recuse himself. He testified that he "was either the eighth attorney or the eleventh attorney" appointed to the defendant throughout his various criminal proceedings. Trial counsel felt that he had "a close working relationship" with the defendant, although he noted that the defendant was unhappy that trial counsel would not participate in discussions about the federal lawsuit that the defendant filed.

Trial counsel interviewed the defendant extensively before trial and followed up with the witnesses that the defendant suggested. He interviewed Lieutenant Tarlecky and listened to audio recordings of Lieutenant Tarlecky's interviews with the defendant, Mr. Ryan, and Mr. Storke. He also reviewed the statements of the officers who searched the defendant's cell. He spoke with jail management to review other jail records pertaining to the July 8 altercation, and he reviewed medical tests that indicated that the defendant was not under the influence of any illegal drugs on the evening of July 8. Trial counsel also contacted prison officials regarding video records of the search of the defendant's administrative segregation cell. Trial counsel met with the defendant numerous times in person and spoke with him on the telephone. Trial counsel felt that he properly investigated the case; he met with witnesses and carefully reviewed all the evidence. He did not believe that the State withheld exculpatory evidence. He stated that receiving the TBI report earlier would have been beneficial, but he agreed that the State did not have early access to the report either. Trial counsel agreed that he filed a pretrial motion to dismiss based upon the State's failure to disclose the exculpatory evidence of Mr. Ryan's conviction.

Trial counsel did not see the results of the TBI tests on the contraband until the morning of trial. He did not ask for a continuance before trial because the State also had not received the evidence, and trial counsel felt that the narrative statement of Ms. Choate was "fairly straightforward" with the exception that the statement mentioned marijuana. Trial counsel felt that he understood the statement and could use cross-examination to address any

7

questions that needed exploration. Trial counsel requested that any mention of marijuana be struck, and the trial court issued a curative instruction to the jury at trial counsel's request.

Trial counsel "became convinced" that the defendant was not guilty of the charge of possession of contraband because he believed that "there was adequate reasonable doubt." He stated that his defense strategy was to show that the defendant "had conducted himself in such a way that he was not part of any contraband scheme, to show that he was not in possession of contraband, [and] to show that there was a significant and material break in the chain of evidence or chain of custody of the alleged contraband materials" from the time of the altercation to the time of the search of the defendant's cell. Trial counsel stated that Mr. Storke was a witness who could help bolster trial counsel's theory of the case. He spoke with Mr. Storke both in person and via telephone.

Trial counsel received notice that the State was seeking to impeach the defendant and enhance his sentence with prior convictions "either ten days or two weeks out" from trial. Trial counsel did not request a hearing as to these notices, but he filed a motion in limine to allow evidence to be introduced showing that the defendant was found not guilty of the two charges for which he was incarcerated when he was charged with possession of contraband. Trial counsel did not object to the State's seeking of an enhancement or the use of impeaching convictions because he believed that the motions were accurate based upon the defendant's criminal record.

Trial counsel informed the defendant that prior convictions could be used to impeach him if he chose to testify and "filed motions and proceeded based on my professional determination of what would be in my client's best interest." Trial counsel discussed this issue with the defendant in both trials where he represented the defendant because the State filed motions for impeachment in both trials.

Trial counsel did not request that an independent fingerprint analysis be performed on the Ramen Noodles package because the State indicated that no fingerprinting had been performed. Trial counsel learned on the day of trial that the State had withdrawn a request for fingerprinting.

Trial counsel agreed that he did not object to the testimony of Officer Gilley as to statements jurors made to Officer Gilley about the photograph and message that the defendant displayed. He also could not recall whether he objected to the removal of the defendant from the courtroom.

Trial counsel did not recall the State's eliciting testimony from Mr. Ryan about the

8

size of the defendant. He did recall the State's making reference to the size difference between Mr. Ryan and the defendant during closing arguments. Trial counsel did not object to the statements or move for a mistrial, but he "did identify that as an issue of concern in the initial motion for new trial."

Trial counsel was able to "briefly" interview Mr. Ryan before he testified, speaking with him "[a] few minutes ahead of time out in the hall or in the witness room." Trial counsel brought out Mr. Ryan's conviction for introduction of contraband into a penal institution in an attempt to impeach Mr. Ryan. He could not recall if he specifically used the word "impeach" but testified that impeachment was his intent.

Trial counsel recalled the trial court's stating that the trial could last two or two and a half days. He did not recall the court's specifically limiting the trial to two days, and he never felt as though the court were imposing a forced end date to the trial.

Trial counsel did not recall having an issue with *voir dire* being limited to thirty minutes. He testified that had he believed that it was an issue and that he needed more time, he "could have and would have requested more time for voir dire." Trial counsel was able to go through his entire list of prepared questions for potential jurors. He received questions from the defendant during *voir dire* and used some of these questions while speaking with the jury.

Trial counsel did not recall that the defendant was warned that he would be ejected from the courtroom during the trial, but he remembered that the defendant was admonished during trial counsel's motion in limine, which occurred the morning of the trial. Trial counsel agreed that, in his opinion, no conduct of the defendant prior to his display to the jury warranted his ejection from the courtroom. Trial counsel confirmed that the defendant missed a portion of closing arguments when "there was an interruption in the video feed."

The trial court found that the defendant did not receive ineffective assistance of counsel, stating, "I can't think of a more admirable, more note worthy representation by any attorney than [trial counsel] in these cases." The court found that trial counsel adequately investigated and prepared for the case, observing that "the representation is not deficient; it's admirable."

The trial court then went through a series of exhibits containing the defendant's *pro se* motions, stating that "[f]rom the very beginning, this Court had to address issues with [the defendant] being disrespectful, being disobedient, and running his own show, doing things on his own." The trial court introduced into the record ten *pro se* motions that the defendant filed that the trial court denied because they were filed while the defendant was represented

by counsel. The trial court referenced an order from September 14, 2011, which recalled the court's warning to the defendant that he would be removed from the courtroom if he spoke out of turn. The trial court, in analyzing its decision to remove the defendant, noted that "this is a continuing issue that the Court had to deal with. [T]his is not an isolated issue." The trial court further found that it had adequately warned the defendant that he would be excluded if he continued to behave disruptively and that the defendant should have known that the warning included showing pictures to the jury:

> I bent over backwards trying many times to lay down the proper way to do things, and it doesn't take a rocket scientist to figure out that you don't go around showing pictures of your girlfriend at a victory party and say that this was not guilty and date it. This was something that the defendant did in this courtroom, and that's a no-brainer.

The trial court found that the defendant was properly excluded from the courtroom pursuant to Rule 43, and the trial court denied the defendant's motion for a new trial. The defendant now appeals the denial of that motion.

## ANALYSIS

### I. Removal of Defendant

The defendant argues that the trial court abused its discretion when it ejected him from the courtroom. Specifically, he contends that the trial court applied an incorrect legal standard for ejection because the defendant was never warned prior to his ejection and that his right to be present at every stage of the proceedings was violated with the audio failure of the video system.

A defendant has a fundamental right to be present at his own trial. Tenn. Const. art. I, § 9; *State v. Muse*, 967 S.W.2d 764, 766 (Tenn. 1998). This right to be present applies to the arraignment, every stage of the trial, including the impanelment of the jury and return of a verdict, and the imposition of a sentence. Tenn. R. Crim. P. 43(a)(1)-(3). However, this right is not absolute, as "further progress of the trial . . . shall not be prevented[.]" Tenn. R. Crim. P. 43(b). When a defendant is initially present for the proceedings, the right shall be considered waived through either a voluntary absence or disruptive conduct of the defendant. Tenn. R. Crim. P. 43(b)(1)-(2). Disruptive conduct waives the right to be present when "[a]fter being warned by the court that disruptive conduct will result in removal from the courtroom, [the defendant] persists in conduct justifying exclusion from the courtroom." Tenn. R. Crim. P. 43(b)(2). If a defendant is removed from the proceedings due to disruptive conduct, the defendant shall receive a reasonable opportunity to communicate with counsel

during the trial, and the trial court shall determine at reasonable intervals whether the defendant demonstrates a willingness to cease disruptive behavior if permitted to return to the courtroom. Tenn. R. Crim. P. 43(c)(2)(A)-(B). The court shall allow the defendant's return when the defendant so signifies and the court reasonably believes the defendant. Tenn. R. Crim. P. 43(c)(2)(B).

Here, the defendant was ejected after it was discovered that he displayed to the jury a photograph of him and his girlfriend along with a piece of paper with the words "This is a victory picture to second not guilty." The defendant argues that the trial court did not comply with the procedures of Rule 43 because he never received a warning before being removed from the courtroom. However, the record indicates that the defendant had a history of engaging in disruptive behavior that the trial court had addressed on multiple previous occasions. At a pretrial hearing on September 2, 2011, the defendant was argumentative and unresponsive to the trial court's questions and was told that if he spoke again he would be held in contempt and removed from the courtroom. When the defendant later spoke without being addressed, the trial court ordered him removed from the courtroom and informed trial counsel that the defendant was not to speak during any further court appearances, stating that "if he says one thing in court from this point on, he is out. Make it very clear to him." In an order issued September 14, 2011, the trial court wrote: "The Defendant shall not speak in open court in regard to or during hearings pertaining to the cases referenced above unless the defendant is providing testimony, and the Defendant shall be subject to a finding and punishment of contempt in the event that he should violate this Order of the Court."

After the defendant displayed the picture, the trial court stated the reasoning for ejecting the defendant from the courtroom:

> Now, I believe that this is a direct attempt by the defendant to influence, put pressure on this jury. This is something that cannot be tolerated in our judicial system, especially, while the jury is hearing the case. I do not want this jury to feel threatened. I don't want them to be influenced by this defendant through the remainder of this trial.
>
> So the defendant will be removed from the courtroom.

We conclude that the trial court substantially complied with the procedural requirements of Rule 43 and did not deprive the defendant of his right of confrontation or right to be present throughout the duration of his trial. The trial court admonished the defendant several times that the order not to speak applied to all proceedings relating to the charge of possession of contraband, which included his trial. The defendant was on notice that any disruptive conduct would result in his removal from the courtroom. He had previously been removed

11

from the courtroom during a hearing for violating the court's order not to speak. We conclude that the defendant was sufficiently warned prior to his ejection. Further, his removal did not prevent him from confronting witnesses against him because the removal occurred prior to closing arguments and after all proof had been presented.

## II. Introduction of the Defendant's Prior Motions

The defendant argues that the trial court abused its discretion by introducing evidence into the record during the defendant's motion for new trial. Specifically, he contends that the trial court presented the appearance of bias and prejudice when it "conducted an investigation and prepared an argument in response to [the defendant's] Motion for New Trial" by introducing evidence of the defendant's prior *pro se* motions to explain why the defendant was removed from the courtroom. The State contends that this argument "mischaracterizes the court's comments." We agree with the State.

In support of his claim, the defendant cites to Tennessee Rule of Evidence 605, which states that "[t]he judge or chancellor presiding at trial may not testify in that trial. No objection need be made in order to preserve that point." He also cites Tennessee Code of Judicial Conduct 2.9(C), which states that "[a] judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed." The defendant seems to argue that the introduction of prior *pro se* motions of the defendant constituted testimony on the part of the trial court and an independent investigation of fact. This argument is misplaced because the trial court had the discretion to take judicial notice of the *pro se* motions.

Tennessee Rule of Evidence 201(b) states that "[a] judicially noticed fact must not be one subject to reasonable dispute, in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." A trial court has the discretion to take judicial notice whether notice is requested or not and may do so at any point during the proceedings. Tenn. R. Evid. 201(c), (f); *State v. Lawson*, 291 S.W.3d 864, 869 (Tenn. 2009). Our supreme court has stated that "'[i]f the records are of the court itself, they may be judicially noted and need not be proved.'" *Lawson*, 291 S.W.3d at 870 (quoting 2A Charles A. Wright, Federal Practice and Procedure: Criminal § 441, at 254 (3d ed. 2000)).

We conclude that it was appropriate for the trial court to admit the defendant's *pro se* motions into evidence. The motions were all filed in the trial court and were pertaining to the records of the court. As the trial court stated, the defendant continually exhibited disruptive behavior and disregard for court orders, and the motions demonstrated that the defendant's behavior was "a continuing issue that the Court had to deal with." The filings

12

were introduced to illustrate the defendant's pattern of disruptive behavior and not to establish the truth of the matters asserted in the other litigation. *See Lawson*, 291 S.W.3d at 870. The motions "were not subject to reasonable dispute" and were "capable of accurate and ready determination by resort" to the records of the court, "whose accuracy cannot reasonably be questioned." Tenn. R. Evid. 201(b). Therefore, the trial court did not abuse its discretion by introducing the evidence of the *pro se* motions into the record.

### III. Recusal

The defendant argues that nine issues required the trial judge to recuse himself and that the cumulative effect of these issues also required recusal.[3] The State argues that the majority of the issues are waived due to prior litigation and a failure to cite to authority or the record. The State further contends that the introduction of the defendant's previous history with the court was proper and did not demonstrate bias on the part of the trial court. We agree with the State.

In this court's opinion on the defendant's interlocutory appeal, we held that the filing of a federal lawsuit against a judge and a judge's former role as a prosecutor did not require the judge to recuse himself from the case. *State v. Antonio Freeman*, 2013 WL 160664, at *4-5. Because this court decided issues one through four and six on the merits, the defendant may not raise them again on direct appeal. The defendant also contends that the trial court questioned appellate counsel regarding the motive and purpose of the filing of the motion to recuse during parts one and two of the motion, doing so in part one "in a tone that was elevated." However, the defendant knew of these grounds for recusal prior to filing his interlocutory appeal; thus, the grounds should have been raised in the interlocutory appeal. *Id.* at *4 (stating that a failure to include known grounds for recusal results in waiver).

The defendant claims that the post-trial Facebook postings of Officers Gilley and Lewis created the appearance of partiality and bias that required the trial judge to recuse

---

[3]The defendant's grounds for recusal are as follows: (1)-(4) the defendant filed a federal lawsuit naming the judge and several of his staff as parties, which gave the appearance of impartiality and bias; (5) the post-trial Facebook postings by Officers Gilley and Lewis indicated impartiality and bias; (6) the trial judge formerly prosecuted the defendant; (7) during the first part of the third motion for recusal hearing, the trial court questioned appellate counsel's filing of the motion, and the court used an inappropriate tone of voice; (8) during the second part of the third motion for recusal hearing, the trial court again questioned appellate counsel's motive for filing the motion; and (9) during the motion for new trial, the trial court stated that he ejected the defendant from the courtroom based upon his prior filing of *pro se* motions and his conduct at previous hearings, and the court introduced transcripts and documents from prior hearings.

himself; however, the defendant cites to neither the record nor any authority to support his contention. *See* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). Accordingly, this issue is waived.

The defendant's sole remaining issue is the court's statement during the motion for new trial that it ejected the defendant from the courtroom due to the previous filings of *pro se* motions and his conduct in prior hearings. Specifically, he contends that the trial court introduced documents and transcripts from prior proceedings that were not relevant and that indicated that the court investigated and prepared discovery evidence. Because we concluded that the introduction of these documents was proper and did not constitute an independent investigation on the part of the court, we also conclude that these actions did not demonstrate bias toward the defendant that required the judge to recuse himself. The defendant is entitled to no relief as to this issue.

## IV. Prosecutorial Misconduct

The defendant argues that the State committed prosecutorial misconduct by assuming facts not in evidence during the cross-examination of Mr. Ryan and during closing arguments. Specifically, he contends that the State elicited misleading testimony from Mr. Ryan that he gave contraband to the defendant as a method of self-defense and improperly compared the size of Mr. Ryan to the defendant during closing arguments.

Closing argument is a valuable tool for both parties during trial, and wide latitude is given to counsel in presenting these arguments to the jury. *State v. Goltz*, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003). Consequently, a trial court is accorded wide discretion in its control of closing arguments. *State v. Zirkle*, 910 S.W.2d 874, 888 (Tenn. Crim. App. 1995). This court will not interfere with that discretion unless there is evidence it was abused. *Smith v. State*, 527 S.W.2d 737, 739 (Tenn. 1975). However, closing arguments "must be temperate, based upon the evidence introduced at trial, relevant to the issues being tried, and not otherwise improper under the facts or law." *Goltz*, 111 S.W.3d at 5. To show error, a defendant must demonstrate that the argument was so inflammatory or the conduct so improper that it affected the verdict to the defendant's detriment. *Id.*

During cross-examination, the assistant district attorney asked Mr. Ryan if he shared his medication with others as "a self-defense type of thing[.]" Mr. Ryan responded affirmatively that he gave some of his pills to the defendant and, when asked why he did, Mr. Ryan testified, "Well, it's like [the assistant district attorney] just asked, it's a self-defense, you know, you have to share or you go to the medical clinic." The prosecutor then asked, "And when you say you go to the medical clinic, that means that if you don't share

14

somebody's going to beat you up and take it from you, correct?[,]" and Mr. Ryan agreed.

In closing argument, the State called the jury's attention to the difference in size between Mr. Ryan and the defendant. The prosecutor also stated, "Would you blame [Mr. Ryan] for giving away some of his pills just so he could keep his and so maybe he could keep his mouth and nose intact? Would you blame him for giving them?" It appears that the defendant believes that Mr. Ryan's testimony that he gave away some of his pills in self-defense was misleading and that the size difference of the two men was not introduced into evidence.

The defendant has provided no evidence that Mr. Ryan's testimony was "misleading." Mr. Ryan was asked if he gave away some of his medication to protect himself, and he answered in the affirmative. The defendant has provided no proof that this testimony was incorrect or coerced by the State. Although the prosecutor did not specifically ask Mr. Ryan or the defendant to state their height and weight, the jury was able to visually observe both men and their differences in size. It was not improper for the prosecutor to reference a fact visually presented to the jury. We conclude that the State did not misstate any of the evidence or elicit misleading testimony or assume facts not in evidence. Accordingly, there was no prosecutorial misconduct on the part of the State, and the defendant is not entitled to relief.

### V. Mr. Hudson's Testimony

The defendant's challenges related to Mr. Hudson's testimony appear to be based on the allegation that, prior to trial, he was unable to discover the identity of Mr. Hudson or the substance of his testimony. The defendant argues that evidence in the form of Mr. Hudson's testimony necessitates a new trial for three reasons. First, he contends that the evidence is newly discovered because trial counsel did not have a reason to discover this information while conducting a normal and routine investigation because the State did not disclose the information. Second, he argues that the evidence was favorable to his case, and the State's failure to provide this evidence constituted a *Brady* violation. Third, he claims that if trial counsel could have discovered this evidence, a failure to do so amounted to ineffective assistance of counsel. A claim of a *Brady* violation is a separate and distinct issue from the denial of a new trial based upon newly discovered evidence, and we address each issue separately. *See State v. Terrell Thomas*, No. E2003-02658-CCA-R3-CD, 2004 WL 2544682, at *3 (Tenn. Crim. App. Nov. 10, 2004).

### A. Newly Discovered Evidence

In seeking a new trial based on newly discovered evidence, there must be a showing

15

that defendant and his counsel exercised reasonable diligence in attempting to discover the evidence and that neither the defendant nor his counsel had knowledge of the alleged newly discovered evidence prior to trial. *State v. Nichols*, 877 S.W.2d 722, 737 (Tenn. 1994); *State v. Caldwell*, 977 S.W.2d 110, 117 (Tenn. Crim. App. 1997). In addition, there must be a showing of the materiality of the testimony, and the trial court must determine whether the result of the trial would likely be changed if the evidence were produced. *Nichols*, 877 S.W.2d at 737; *State v. Singleton*, 853 S.W.2d 490, 496 (Tenn. 1993). The granting or refusal of a new trial on the basis of newly discovered evidence rests within the sound discretion of the trial court. *State v. Walker*, 910 S.W.2d 381, 395 (Tenn. 1995); *Caldwell*, 977 S.W.2d at 117.

Mr. Hudson testified that he threw the defendant's commissary items out into the middle of the jail pod, and an altercation ensued shortly thereafter. He stated that officers later gathered the commissary items and that the defendant was not in possession of the items from the time that Mr. Hudson hurled them over the railing to the time when officers collected the items. Mr. Hudson also testified that the defendant returned to his cell shortly after Mr. Hudson threw his items, and words were exchanged in front of the cell with several inmates present, including the defendant and Mr. Hudson. The altercation began soon after the exchange in front of the cell. The trial court found that the evidence was not newly discovered because Mr. Hudson's testimony indicated only that he was a possible witness to events previously testified to at trial.

We conclude that the trial court did not abuse its discretion in refusing to grant the motion for new trial based upon "newly discovered evidence." Mr. Hudson's testimony did not provide a material missing link in the chain of custody of the defendant's commissary items; Mr. Hudson made no allegation that a guard or inmate tampered with the defendant's items or planted the contraband in the noodle package. Rather, the testimony merely served to corroborate the testimony of other witnesses, such as Mr. Storke and the defendant, that the defendant's items were thrown into the middle of the jail pod, officers later collected the items, and the defendant did not have access to the items from the time that they were thrown from his cell to the time that the search revealed contraband. Even if trial counsel could not have discovered Mr. Hudson when exercising reasonable diligence, nothing in the record supports a finding that Mr. Hudson's testimony was material or that it would likely have changed the outcome of the defendant's trial. Accordingly, the defendant is not entitled to relief as to this claim.

### B. *Brady* Violation

The defendant also contends that the failure to disclose Mr. Hudson's identity was a violation of his due process rights under *Brady v. Maryland*. It appears that the defendant

16

is alleging that the State knew that Mr. Hudson participated in the altercation but failed to provide the defendant with Mr. Hudson's identity or the substance of his testimony.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of the prosecution." 373 U.S. at 87; *see also Sample v. State*, 82 S.W.3d 267, 270 (Tenn. 2002). The duty to disclose extends to all "favorable information" regardless of whether the evidence is admissible at trial. *Johnson v. State*, 38 S.W.3d 52, 56 (Tenn. 2001). However, the State is not required to disclose information that the defendant already possesses or is able to obtain. *State v. Marshall*, 845 S.W.2d 228, 233 (Tenn. Crim. App. 1992). Nor is the State required to disclose information which is not possessed by or under the control of the prosecution or other governmental agency. *Id.*

In order to establish a violation of due process under *Brady*, the defendant must demonstrate that:

> 1. The defendant requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);
> 2. The State must have suppressed the information;
> 3. The information must be favorable to the accused; and
> 4. The information must have been material.

*State v. Edgin*, 902 S.W.2d 387, 389 (Tenn. 1995). Evidence is considered material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the results of the proceeding would have been different. *Kyles v. Whitley*, 514 U.S. 419, 435 (1995); *Edgin*, 902 S.W.2d at 389. In order to prove a *Brady* violation, a defendant must show that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435. The defendant must prove a constitutional violation by a preponderance of the evidence. *Edgin*, 902 S.W.2d at 389.

We conclude that the defendant has failed to establish proof of a *Brady* violation. Trial counsel testified that he requested and received a jail module report and that the report did not contain the name of Mr. Hudson. Even if the State had an obligation to disclose Mr. Hudson's name, the defendant has not proved by a preponderance of the evidence that the information was material. As we concluded above, Mr. Hudson's testimony served only to corroborate the testimony of other witnesses. There is not a reasonable probability that the disclosure of Mr. Hudson would have resulted in a different outcome of the defendant's trial or could have been taken to undermine confidence in the verdict of guilty. Therefore, the

17

defendant is not entitled to relief as to this issue.

## C. Ineffective Assistance of Counsel

The defendant also claims that if trial counsel could have discovered the information exercising due diligence, his failure to do so constituted ineffective assistance of counsel. Because we concluded that Mr. Hudson's testimony would not have altered the outcome of the defendant's trial, we also conclude that the defendant cannot demonstrate any resulting prejudice from a failure to discover the information, even if trial counsel could have discovered this information through a reasonable investigation. Accordingly, the defendant is not entitled to any relief.

## VI. Ineffective Assistance of Counsel

The defendant argues that he received ineffective assistance of counsel and raises thirteen specific claims of misconduct. Specifically, he contends that counsel was ineffective in: (1) failing to investigate the matter that led to filing his first motion to withdraw because trial counsel later determined that the defendant's conversation with trial counsel's paralegal did not rise to the level of a criminal threat; (2) failing to properly investigate the case, meet with witnesses, and review the evidence; (3) failing to object to the testimony of Mr. Ryan and failing to properly impeach Mr. Ryan; (4) failing to file a pretrial motion in limine to exclude evidence when he learned that evidence was not timely presented to the defense, failing to ask for a continuance, and failing to object to the marijuana and make a motion to suppress; (5) failing to object to the trial court's whiting out mention of marijuana from the TBI report and its tampering with evidence; (6) failing to file a motion in limine opposing the State's motion to seek an enhancement and to use convictions for impeachment purposes; (7) failing to request independent fingerprinting analysis on the evidence used against the defendant; (8) failing to object to Officer Gilley's hearsay testimony regarding juror allegations; (9) failing to object and move for a mistrial when the State introduced facts not in evidence; (10) failing to impeach the credibility of Mr. Ryan; (11) failing to object to the trial court's instructions to the jury advising that the trial would not continue past December 6, 2011; (12) failing to object to the limitation of *voir dire* to thirty minutes; and (13) failing to object to the removal of the defendant from the courtroom. He argues that some of the claims standing alone are sufficient to support a finding of ineffective assistance of counsel and that the cumulative effect of all of the errors rises to the level of ineffective assistance of counsel.

This court has repeatedly stated that raising a claim of ineffective assistance of counsel on direct appeal is a practice "fraught with peril." *State v. Blackmon*, 78 S.W.3d 322, 328 (Tenn. Crim. App. 2001). We review claims of ineffective assistance of counsel

raised on direct appeal under the same standard as those raised in post-conviction proceedings. *State v. Burns*, 6 S.W.3d 453, 461 n.5 (Tenn. 1999). The defendant bears the burden of proving the allegations of fact giving rise to the claim by clear and convincing evidence. *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)).

On appeal, the trial court's findings of fact are conclusive unless the evidence preponderates otherwise. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). This court may not substitute its own inferences for those drawn by the post-conviction court, as questions concerning the credibility of witnesses, the weight and value of the evidence, and the factual issues raised by the evidence are to be resolved by the trial court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). A claim of ineffective assistance of counsel raises a mixed question of law and fact which this court reviews de novo. *Fields*, 40 S.W.3d at 455; *Burns*, 6 S.W.3d at 461. The trial court's conclusions of law on the claim are reviewed under a purely de novo standard with no presumption of correctness. *Fields*, 40 S.W.3d at 457.

Both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee the right to counsel. This right affords an individual representation that is "within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Counsel is ineffective when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must prove by clear and convincing evidence that: (1) counsel's performance was deficient; and (2) the deficiency prejudiced the petitioner to the degree that the petitioner did not receive a fair trial. *Strickland*, 466 U.S. at 687. A petitioner satisfies the deficiency prong of the test by showing that counsel's representation fell below an objective standard of reasonableness; that is, "the services rendered or the advice given must have been below 'the range of competence demanded of attorneys in criminal cases.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Baxter* 523 S.W.2d at 936); *see Strickland*, 466 U.S. at 687. The petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Courts evaluating the performance of an attorney "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. In order to fairly assess counsel's conduct, every effort must be

made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996).

Prejudice requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If the petitioner fails to establish either deficiency or prejudice, post-conviction relief is not appropriate, and this court need not address both components if the petitioner makes an insufficient showing as to one component. *Grindstaff*, 297 S.W.3d at 216; *Goad*, 938 S.W.2d at 370.

### A. Motion to Withdraw

The defendant argues that trial counsel failed to adequately investigate the incident that led to the filing of the motion to withdraw before filing the motion. He contends that, as a result, trial made allegations that prejudiced the defendant with the trial court because the court believed that the defendant himself, rather than an allergic reaction to medication, was the cause of the outburst. Trial counsel filed his motion to withdraw after the defendant called his office and spoke angrily and profanely to trial counsel's paralegal. However, trial counsel withdrew the motion after the defendant apologized and promised not to speak rudely to trial counsel's assistant. Trial counsel also determined that the statements did not rise to the level of a threat and informed the court that he learned that the defendant made the outburst while having a reaction to his medication. We conclude that the defendant has not made a showing that there is a reasonable probability that the outcome of his trial would have been different had trial counsel investigated the incident before filing his motion. Accordingly, the defendant is entitled to no relief.

### B. Failure to Investigate

The defendant contends that trial counsel failed to properly investigate his case, meet with all witnesses, and review all of the evidence. His only support for this argument is that trial counsel did not know how Mr. Ryan would testify and whether the testimony would be beneficial or harmful to the defense. However, trial counsel testified that he spoke with Mr. Ryan before Mr. Ryan took the stand and was aware of how Mr. Ryan would testify because trial counsel had a transcript of Mr. Ryan's guilty plea to the charge of introduction of contraband into a penal facility. Trial counsel testified that he spoke numerous times with the defendant, interviewed all of the witnesses that the defendant suggested, and reviewed

20

all of the evidence prior to trial. The trial court found that trial counsel spoke with witnesses who would be helpful to the defense and was thoroughly prepared to represent the defendant. The trial court noted that "there was nobody more adequately prepared to represent the defendant in a second jury trial than [trial counsel]." We agree with the trial court. The evidence does not preponderate against the trial court's determination that trial counsel investigated inadequately, and no relief is warranted as to this issue.

### C. Testimony of Mr. Ryan

The defendant argues that trial counsel failed to object to the testimony of Mr. Ryan or properly impeach him. It appears that he takes issue with Mr. Ryan's testimony that he gave contraband to the defendant to avoid a physical altercation, and the defendant implies that this testimony was compelled due to Mr. Ryan's conviction for introduction of contraband into a penal facility. Trial counsel testified that he did not object or move for a mistrial after the State questioned Mr. Ryan about self-defense, but he did identify that testimony as an issue of concern in the initial motion for new trial. Trial counsel testified that he brought out Mr. Ryan's conviction for introduction of contraband with the intent to impeach Mr. Ryan, although he did not specifically use the word "impeachment."

The record indicates that trial counsel did impeach Mr. Ryan because trial counsel made the jury aware of the fact that Mr. Ryan was convicted of introduction of contraband. The defendant presented no evidence to support his assertion that Mr. Ryan's testimony was compelled or misleading. We conclude that the defendant has not shown a reasonable probability that an objection to Mr. Ryan's testimony would have altered the outcome of his trial. The defendant is not entitled to any relief.

### D. References to Marijuana

The defendant claims that counsel was ineffective for failing to file a motion in limine to exclude evidence that had not been timely presented to the defense and complains that trial counsel should have asked for a continuance in light of the new information. He also takes issue with trial counsel's failure to object to the trial court's "whiting out" the mention of marijuana from the TBI report and contends that the trial court's action constituted "tampering with evidence." The evidence at issue is the TBI report that indicated that the leafy substance discovered in the Ramen Noodles packet was marijuana. The defendant also contends that trial counsel failed to object to the marijuana and failed to file a motion to suppress the marijuana.

Trial counsel testified that he received the information in the TBI report on the morning of trial and did not feel a continuance was necessary because neither trial counsel

21

nor the State had received the report until the morning of trial and because the report was "fairly straight forward." Trial counsel did not ask for a continuance because he believed that he could understand the report and ask questions of Ms. Choatie "to address any questions needed to be explored." Trial counsel also requested that the mention of marijuana be struck from the record and requested that the jury be given a curative instruction. The trial court instructed the jury that Ms. Choatie "identified certain material as marijuana. I instruct you that you are not to consider this as evidence, and all references will be stricken from the record regarding any marijuana." The trial court then struck all references to marijuana from the TBI report that was submitted to the jury.

The defendant has not shown that trial counsel performed deficiently regarding the mention of marijuana in the TBI report. Trial counsel made a strategic decision not to request a continuance because he believed he understood the report and could address any concerns with the report on cross-examination. Trial counsel appropriately raised the issue of Ms. Chotie's reference to marijuana before the trial court, and the trial court issued a curative instruction to the jury and removed the mention of marijuana from the report. The defendant is not entitled to any relief.

### E. Enhancing and Impeaching Convictions

The defendant contends that trial counsel failed to file a motion in limine opposing the State's motion to use the defendant's prior convictions for impeachment purposes and to enhance his sentence. Tennessee Rule of Evidence 609 permits the use of prior convictions to impeach a witness so long as the crime was punishable by death or imprisonment of more than one year. Tenn. R. Evid. 609(a), (2). Evidence of a conviction is inadmissible if a time period of more than ten years has elapsed between the date of release from confinement and the commencement of the current action unless the adverse party receives sufficient advanced notice of intent to use such evidence, and the trial court determines that the probative value of the conviction substantially outweighs the prejudicial effect. Tenn. R. Evid. 609(b). If the conviction did not result in confinement, the date of conviction is used to measure the ten-year time period. *Id.*

Here, the State relied on three prior convictions to impeach the defendant and to enhance his sentence and properly gave the defendant notice of the use of these convictions. Although the defendant makes no mention of the issue in his brief, the State points out that two of the defendant's convictions potentially fell outside the ten-year time period provided by Rule 609. The prosecution against the defendant commenced on November 4, 2010, when an indictment was filed against the defendant. The defendant's first conviction was for theft of property over $10,000 and occurred in 2001, within the ten-year period prescribed by Rule 609. However, the two other convictions were for drug offenses that occurred in

2000, and the record does not indicate whether these convictions resulted in the defendant's confinement. If the defendant was not confined or was released before November 4, 2000, the convictions would be outside the time limitation of Rule 609.

The defendant bears the burden of proving that the convictions were inadmissible. The defendant has failed to demonstrate prejudice because he has not shown that his convictions would have been inadmissible or that their admission affected the outcome of his trial. Accordingly, the defendant is entitled to no relief.

### F. Fingerprint Analysis

The defendant argues that trial counsel failed to request independent fingerprinting on the Ramen Noodle packet and the contraband discovered in the packet. Trial counsel said that the State did not conduct a fingerprint analysis and recalled that the State may have requested a fingerprint analysis but later withdrew the test. Trial counsel learned that the request was withdrawn on the day of trial. At the motion for new trial, the defendant provided no evidence regarding what the results of an independent fingerprint analysis would have been and presented no proof as to how he was prejudiced by trial counsel's failure to request a fingerprint analysis. *See Black v. State*, 794 S.W.2d 752 (Tenn. Crim. App. 1990). Accordingly, the defendant is not entitled to relief as to this issue.

### G. Officer Gilley's Testimony

The defendant claims that trial counsel failed to object to Officer Gilley's hearsay testimony regarding the allegations of the jurors. Officer Gilley brought to the attention of the court that several jurors had informed him that the defendant showed them a sign during the proceedings. The trial court then asked Officer Gilley to speak with the jurors to discover what the jurors witnessed. Officer Gilley testified that several jurors told him that the defendant displayed a folder with the words "Victory Celebration" and a photograph. The folder was then admitted into evidence.

Officer Gilley's testimony was pertinent only to the trial court's decision to exclude the defendant and instruct the jury not to consider any communications that the defendant made other than his testimony. Officer Gilley's testimony was not given before a jury, and it was not relevant to the substantive issues before the jury. The defendant has not demonstrated that an objection to Officer Gilley's testimony had a reasonable probability of affecting the outcome of the trial. Accordingly, the defendant is not entitled to relief.

## H. Closing Argument

The defendant argues that trial counsel failed to object and move for a mistrial when the State introduced facts not in evidence during closing argument and during the cross-examination of Mr. Ryan. The defendant makes no reference to what "facts not in evidence" that the State introduced. From the record, it appears that he takes issue with both Mr. Ryan's testimony that he gave some of his medication to the defendant as a method of self-defense to protect himself from harm and the prosecutor's closing statement that referenced the size difference between Mr. Ryan and the defendant. Because we have previously concluded that the statements did not constitute prosecutorial misconduct, we decline to conclude that trial counsel's failure to object was deficient.

## I. Length of Trial

The defendant contends that trial counsel was ineffective for failing to object to the trial court's instruction to the jury that the trial would not take longer than two days. At trial, the court informed the jury that he trusted and valued both attorneys immensely and that the attorneys "assure me that the case will be done in two days. We'll do that. This will not be an issue." Trial counsel testified that he did not recall the trial court's limiting the trial to two days. Trial counsel believed that the nature of the exchange with the jury was "to reassure them that we thought in good faith it could be done in two days." The defendant has not shown a reasonable probability that the failure to object to the trial court's instruction would have resulted in a different outcome at trial. The defendant is not entitled to any relief.

## J. Limit on *Voir Dire*

The defendant claims that trial counsel was ineffective for failing to object to the trial court's limitation of *voir dire* to thirty minutes. Trial counsel testified that he "did not see it as an issue. Had [he] needed more time, [he] could have and would have requested more time for voir dire." The defendant has failed to show a reasonable probability that an extension of *voir dire* would have affected the outcome of his trial. Accordingly, the defendant is not entitled to relief as to this claim.

## K. Removal of the Defendant

The defendant posits that trial counsel was ineffective for failing to object to the defendant's removal from the courtroom. We previously concluded that the trial court's decision to remove the defendant from the courtroom did not constitute error. Accordingly, the defendant cannot demonstrate prejudice from a failure to object to his removal. The defendant is not entitled to relief as to this claim.

## L. Cumulative Effect

The defendant contends that the cumulative effect of trial counsel's errors are grounds for a mistrial. Because we concluded that the defendant is not entitled to relief as to any of his numerous claims of ineffective assistance of counsel, we also conclude that the cumulative effect doctrine does not afford the defendant any relief.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE